```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

|  |  |
|---|---|
| LAQUITA BYRD and MARCUS BYRD, both individually and as wrongful death representatives of DEION BYRD  **Plaintiffs,**  v.  SHERIFF FLOYD BONNER, JR., in his individual capacity; CHIEF JAILOR KIRK FIELDS, in his individual capacity; and THE GOVERNMENT OF SHELBY COUNTY, TENNESSEE  **Defendants.** | No. 2:24-cv-02043-SHM-tmp |

**ORDER GRANTING MOTION TO DISMISS AND
DENYING AS MOOT MOTION TO STAY DISCOVERY**

Plaintiffs Laquita Byrd and Marcus Byrd bring this action under 42 U.S.C. § 1983. Before the Court is Defendants Floyd Bonner, Jr. and Kirk Fields' Motion to Dismiss. See ECF No. 16.[1] Plaintiffs have responded. See ECF No. 25. Defendants have replied. See ECF No. 26. Defendants' Motion is GRANTED. Plaintiffs' supervisory-liability and deliberate-indifference claims against Defendants are DISMISSED WITH PREJUDICE.

---

[1] Shelby County, Tennessee is also a defendant in this action. Shelby County has not filed a motion to dismiss. For purposes of this Order, "Defendants" refers only to Defendants Bonner and Fields.

Defendants' pending Motion to Stay, see ECF No. 17, is DENIED AS MOOT.

I.  **Background**

On October 26, 2023, Deion Byrd was a pretrial detainee at the Shelby County Jail (the "SCJ") in Memphis, Tennessee. See ECF No. 1, ¶ 14.[2] Byrd had a court appearance that day and was placed in a holding cell behind a courtroom. See id. Another detainee, "Inmate Clay", was with Byrd. Id. The two men were unsupervised while "waiting to be escorted back to the SCJ." Id.

A "confrontation occurred between the two men," and Byrd "was chased into a nearby interview room and then stabbed at least once in the neck with a 'shank.'" Id. Byrd and Inmate Clay were unmonitored during the confrontation, and it was only after Byrd had been stabbed "that a correctional officer re-entered the inmate area and witnessed Inmate Clay throw the 'shank' on the floor." Id. Byrd died. See id. at 1.

Plaintiffs, Byrd's parents, bring this action individually and as Byrd's wrongful death representatives. Id. at 1–2. Bonner is the Sheriff of Shelby County. Id. ¶ 2. Fields is the Director of the SCJ. Id. ¶ 3.

---

[2] When citing the Complaint, the Court refers to paragraph numbers where applicable. When an allegation does not correspond to a specific paragraph number, the Court cites page numbers generated by the ECF system.

2

Plaintiffs allege that several dangerous conditions have persisted at the SCJ for many years, including overcrowding, understaffing, and poor inmate monitoring. See id. ¶¶ 98, 102. Plaintiffs allege that those conditions have increased the risk of inmate-on-inmate violence, that such violence has been rampant at the SCJ during Defendants' tenures, and that the SCJ has become more dangerous under Defendants' management. See id. ¶¶ 18-41, 98, 102. Plaintiffs support their allegations with statistics of assaults and deaths at the SCJ, see id. ¶¶ 18-20, comparisons to other correctional institutions, see id. ¶¶ 31-41, reports from outside investigations, see id. ¶¶ 45-52, and a description of another SCJ pretrial assault, see id. ¶¶ 21-30.

Plaintiffs' causes of action against Defendants are labeled "Supervisory Liability under 42 U.S.C. § 1983." See id. at 27, 29. Although Plaintiffs make a separate claim against each Defendant, the language of the two claims is largely identical. Compare id. ¶¶ 96-99 (supervisory-liability claim against Bonner), with id. ¶¶ 100-03 (supervisory-liability claim against Fields). Language in the Complaint could be construed to assert deliberate-indifference (sometimes called "failure-to-protect" or "deliberate-indifference for failure to protect") claims. Plaintiffs were directed to notify the Court whether they sought to recover on both claims. See ECF No. 29. Plaintiffs responded

affirmatively, and the Parties briefed the viability of deliberate-indifference claims and supervisory-liability claims. See ECF Nos. 30–32.

Plaintiffs allege that Defendants were "at all pertinent times responsible for the management of the [SCJ]." See ECF No. 1, ¶¶ 96, 100. Plaintiffs allege that Defendants "had a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures of and for the [Shelby County Sheriff's Office ("SCSO")]." Id. ¶¶ 97, 101. Plaintiffs allege that, before and at the time of Byrd's death, Defendants "knew" of the extensive levels of inmate-on-inmate violence at the SCJ, knew of several dangerous conditions that could contribute to the violence, and knew of ways to reduce the violence. See id. ¶¶ 98, 102. Plaintiffs allege that, "[d]espite [that] knowledge, [Defendants] . . . failed to take adequate steps to curb inmate-on-inmate violence at the [SCJ]." Id. ¶¶ 99, 103.

Elsewhere in the Complaint, Plaintiffs allege that "Shelby County and Sheriff Bonner individually, are specifically making a conscious decision to ensure any applicants to the Shelby County's Sheriff's Department first and foremost attempt to gain employment as a patrol officer, [which contributes to the understaffing issues at the SCJ], and are thus exhibiting

4

deliberate indifference to the needs, safety, and wellbeing of the inmates under their control and protection all for the bottom dollar of Shelby County." Id. ¶ 62.

Plaintiffs allege that Fields "maintains few formal reporting processes to allow him to monitor activities at the [SCJ]." Id. ¶ 78. Plaintiffs contend that Fields "relies only on verbal reports from his division heads in informal staff meetings that are not documented in any way", and that "disciplinary issues for both inmates and staff are handled on a case-by-case basis and are not analyzed in a fashion that would allow [Fields] and his leadership team to determine whether the [SCJ] is in compliance with its putative policies." Id.

Defendants contend that Plaintiffs' claims should be dismissed for four reasons. One, the claims fail to make specific allegations about how Defendants were personally involved in the deprivation of Byrd's rights. See ECF No. 16-1, at 3-4. Two, on the supervisory-liability claims, Plaintiffs do not allege that Defendants "encouraged the specific incident of misconduct or in some other way directly participated in it." See id. at 4 (quoting Cardinal v. Metrish, 564 F.3d 794, 802-03 (6th Cir. 2009)). Three, on the deliberate-indifference claims, Plaintiffs do not plead, with particularity, facts that demonstrate Defendants were deliberately indifferent to the conditions and

5

risks Byrd faced. See ECF No. 31, at 2-3. Four, Defendants are entitled to qualified immunity because Plaintiffs fail to plead with specificity what conduct was unconstitutional and what clearly established right was violated. See ECF No. 16-1, at 8-9; ECF No. 31, at 4-5.

**II. Jurisdiction**

Plaintiffs' claims are brought under 42 U.S.C. § 1983. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**III. Standards**

  **A.  Standard of Review**

To survive a motion to dismiss, a complaint's factual allegations must be "sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Hayward v. Cleveland Clinic Found., 759 F.3d 601, 608 (6th Cir. 2014) (quoting Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)). The Court must "view the complaint in the light most favorable to [Plaintiffs] as the nonmovant[s], accepting the complaint's well-pleaded factual allegations as true and drawing all reasonable inferences in favor of [Plaintiffs]." Zakora v. Chrisman, 44 F.4th 452, 464 (6th Cir. 2022). However, the Court does not apply those presumptions "to threadbare recitals of a

cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

**B.   Requirements to State a Claim under 42 U.S.C § 1983**

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Moldowan v. City of Warren, 578 F.3d 351, 376 (6th Cir. 2009) (internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)). "To state a cognizable claim against an individual under § 1983, 'a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.'" Heyerman v. County of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006)).

**C.   Qualified Immunity**

Bonner and Fields assert the defense of qualified immunity. See ECF No. 16-1, at 7-9. "The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." Quigley v. Tuong Vinh Thai, 707 F.3d 675, 680 (6th Cir. 2013). "Once a defendant invokes qualified immunity, the plaintiff bears the burden to show that qualified

7

immunity is inappropriate" by demonstrating that "(1) the defendant violated a constitutional right; and (2) the right was clearly established." Id. at 680–81 (quoting Bishop v. Hackel, 636 F.3d 757, 765 (6th Cir. 2011)).

### D. Fourteenth Amendment Rights

Pretrial detainees have a Fourteenth Amendment right to reasonable protection from violence inflicted by other detainees. See Westmoreland v. Butler County, 29 F.4th 721, 726–27 (6th Cir. 2022). "It is not, however, every injury suffered by one [pretrial detainee] at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To hold specific prison officials liable for a constitutional violation, detainees must show that they were confined under conditions that posed a substantial risk of serious harm and that the identified officials played active roles in creating those specific conditions. See id. at 726–27, 729; see also Helphenstine v. Lewis County, 60 F.4th 305, 321 (6th Cir. 2023). Plaintiffs submit two theories by which they seek to hold Defendants liable for Byrd's death: supervisory liability and deliberate indifference.

8

## IV. Supervisory Liability

### A. Law

Supervisory-liability claims are a means by which government officials can be held liable for violating pretrial detainees' right to be reasonably protected from violence. "[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 470 (6th Cir. 2006). "To succeed on a supervisory liability claim, a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Helphenstine, 60 F.4th at 321 (quoting Crawford v. Tilley, 15 F.4th 752, 761 (6th Cir. 2021)). "This requires active unconstitutional conduct by the supervisor because supervisory liability will not attach for a failure to act." Id.

In narrow circumstances, inaction can be construed as implicit authorization of a subordinate's conduct, and thus be considered "active involvement" in the constitutional violation. See Winkler v. Madison County, 893 F.3d 877, 898–99 (6th Cir. 2018). A plaintiff seeking to establish "active involvement" in that way must show 1) the supervisor knew that his subordinates were engaging in unconstitutional conduct, 2) the supervisor failed to perform a specific job responsibility, 3) the

9

fulfillment of that responsibility would have prevented the unconstitutional conduct, and 4) the supervisor's choice to abdicate that job responsibility directly caused the alleged constitutional violation. See id. (citing Taylor v. Mich. Dep't of Corr., 69 F.3d 76, 80-81 (6th Cir. 1995); then citing Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992)).

However a plaintiff establishes a defendant's involvement, there "must be a 'causal connection' between the defendant's 'active unconstitutional behavior' and the plaintiff's injuries." Crawford, 15 F.4th at 761–62 (quoting Peatross v. City of Memphis, 818 F.3d 233, 242 (6th Cir. 2016)). The "defendant's execution of his job functions must have caused the plaintiff's injury." Id. at 762.

### B. Constitutional Violation

#### 1. Sheriff Bonner

Plaintiffs have not plausibly alleged that Bonner violated Byrd's Fourteenth Amendment rights by failing to protect Byrd from detainee-on-detainee violence. Plaintiffs' claim fails for at least two reasons.

One, at the root of a supervisory-liability claim is the requirement that the defendant's subordinate injured the plaintiff by acting unconstitutionally. The plaintiff then seeks to hold the defendant liable for the defendant's participatory

10

role in the subordinate's unconstitutional conduct. See Helphenstine, 60 F.4th at 321; McQueen, 433 F.3d at 470. Here, Plaintiffs do not allege with particularity that one of Bonner's subordinates acted unconstitutionally by leaving Byrd and Inmate Clay unmonitored temporarily or by otherwise creating the specific conditions that caused Inmate Clay's attack on Byrd.

Two, even if Plaintiffs had pled that one of Bonner's subordinates acted unconstitutionally, Plaintiffs have not plausibly alleged that Bonner authorized, approved, knowingly acquiesced in, or directly participated in that unconstitutional conduct. The crux of Plaintiffs' claim against Bonner is that, despite knowledge of dangerous conditions at the SCJ and knowledge of possible remedies for those conditions, Bonner "failed to take adequate steps to curb inmate-on-inmate violence at the [SCJ]." See ECF No. 1, ¶ 99. A supervisory-liability claim "requires active unconstitutional conduct by the supervisor because supervisory liability will not attach for a failure to act." Helphenstine, 60 F.4th at 321. To the extent that Plaintiffs allege Bonner abdicated his job responsibilities, see Winkler, 893 F.3d, at 898-99, their claim also fails. Plaintiffs do not allege that Bonner knew that his subordinates were acting unconstitutionally or that Bonner's inaction

11

directly (as opposed to indirectly) resulted in the circumstances that Byrd faced on October 26, 2023.

Plaintiffs allege that "Shelby County and Sheriff Bonner individually, are specifically making a conscious decision to ensure any applicants to the Shelby County's Sheriff's Department first and foremost attempt to gain employment as a patrol officer," contributing to staffing shortages at the SCJ. See ECF No. 1, ¶ 62. Allegations about Bonner's general hiring practices do not plausibly establish that Bonner directly caused Byrd's constitutional injury. Plaintiffs do not allege that Bonner knew his subordinates were acting unconstitutionally in the SCJ holding cells. Plaintiffs do not allege that Bonner "encouraged the specific incident of misconduct or in some other way directly participated in it." Taylor, 69 F.3d at 81 (quoting Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiffs do not allege that Bonner was aware of and at least acquiesced in the conduct of his subordinates during Byrd's court appearance on October 26, 2023. See Winkler, 893 F.3d, at 898-99.

### 2. Director Kirk Fields

Plaintiffs fail to plausibly allege that Fields violated Byrd's Fourteenth Amendment right to be free from detainee-on-detainee violence.

Plaintiffs do not allege that one of Fields' subordinates acted unconstitutionally when Byrd and Inmate Clay were left unsupervised temporarily in the holding cell. Unconstitutional conduct by a subordinate is a "prerequisite" of supervisory liability under § 1983. McQueen, 433 F.3d at 470.

Plaintiffs' core allegation is that, despite having knowledge of unsafe conditions at the SCJ and knowledge of ways to correct those conditions, Fields "failed to take adequate steps to curb inmate-on-inmate violence at the [SCJ]." Id. ¶ 103. That conduct does not amount to the "active involvement" necessary for a viable supervisory-liability claim. See Helphenstine, 60 F.4th at 321.

Plaintiffs allege that Fields maintained inadequate reporting and disciplinary processes at the SCJ. See ECF No. 1, ¶ 78. Fields' alleged administrative shortcomings do not plausibly establish that Fields impliedly authorized, approved, or knowingly acquiesced in a subordinate's unconstitutional conduct, or otherwise directly participated in a specific incident of alleged unconstitutional conduct.

### 3. Summary

Plaintiffs have not alleged plausible supervisory-liability claims against Defendants. The supervisory-liability claims against Defendants are DISMISSED WITH PREJUDICE.

13

## V. Deliberate Indifference or Failure to Protect

### A. Law

Deliberate-indifference claims are another means by which government officials can be held liable for violating pretrial detainees' Fourteenth Amendment right to be reasonably protected from detainee-on-detainee violence. See Westmoreland, 29 F.4th at 729. To establish deliberate indifference, a pretrial-detainee plaintiff must not only show that a defendant "acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Brawner v. Scott County, 14 F.4th 585, 596 (6th Cir. 2021) (quoting Farmer, 511 U.S. at 836). "A pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" Id. (quoting Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

The Sixth Circuit has stated a four-part test. To "establish deliberate indifference for failure to protect, 'a defendant officer must [1] act intentionally in a manner that [2] puts the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the plaintiff's injuries.'" Stein v. Gunkel, 43 F.4th 633, 639 (6th Cir. 2022) (quoting Westmoreland, 29 F.4th at 729). Considering the first factor, Sixth Circuit caselaw

14

makes clear that the relevant inquiry is whether the defendant's conduct was intentional as to the plaintiff. That is, whether the defendant made decisions about the plaintiff's specific conditions of confinement rather than about the conditions of confinement applied to pretrial detainees generally.[3]

### B.  Constitutional Violation

#### 1.  Sheriff Bonner

Plaintiffs have not alleged a plausible claim that Bonner violated Byrd's Fourteenth Amendment rights by being deliberately indifferent to a substantial risk of harm that Byrd faced.

---

[3] See, e.g., Buetenmiller v. Macomb Cnty. Jail, 53 F.4th 939, 945–46 (6th Cir. 2022) (no intentional decision made when an officer did not stop known policy infractions because the officer was not informed about the danger that a detainee faced specifically); Stein, 43 F.4th at 639 (assuming, for purposes of analysis, that an intentional decision was made when two deputies selected the booking classification of a detainee's assailant); Westmoreland, 29 F.4th at 729 (finding that an intentional decision was made when an officer chose to keep a pretrial detainee in a particular cell after being advised about safety concerns); McGowan v. Herbert, No. 22-2033, 2023 WL 2945341, at *3 (6th Cir. Apr. 14, 2023) (finding that an intentional decision was made when an officer moved a specific detainee out of protective custody); Reece v. Carey, No. 22-5275, 2023 WL 3003191, at *4 (6th Cir. Apr. 19, 2023) (assuming, for purposes of analysis, that an intentional decision was made when a deputy classified a detainee as minimum security and placed that detainee in an overcrowded cell with higher-security detainees); Davis v. Chorak, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (finding that an intentional decision was made when two deputies "made intentional security-classification decisions" as to the detainee and his attacker). See also Castro, 833 F.3d at 1070–72 (finding no dispute that an intentional decision was made when defendants placed the assailant in the plaintiff's cell and created the specific conditions that resulted in a lack of supervision).

15

Plaintiffs have not plausibly alleged that Bonner made any intentional decisions about Byrd's relevant conditions of confinement. Plaintiffs allege that Bonner knew of dangerous conditions at the SCJ but "failed to take adequate steps to curb inmate-on-inmate violence at the [SCJ]." See ECF No. 1, ¶ 99. Plaintiffs also allege that Bonner, along with Shelby County, made a conscious decision to ensure that applicants to the SCSO sought employment as patrol officers before employment as SCJ employees. See id. ¶ 62. Those allegations do not suggest that Bonner knew about Inmate Clay's proclivity for violence, made a deliberate choice about Byrd's temporary proximity to Inmate Clay, or selected the level of supervision that those two detainees received on October 26, 2023.

### 2. Director Kirk Fields

Plaintiffs have not alleged a plausible claim that Fields violated Byrd's Fourteenth Amendment rights by being deliberately indifferent to a substantial risk of harm that Byrd faced.

Plaintiffs have not plausibly alleged that Fields made intentional decisions about Byrd's relevant conditions of confinement. Plaintiffs allege that Fields knew about several dangerous conditions at the SCJ, but "failed to take adequate steps to curb inmate-on-inmate violence at the [SCJ]." See id.

16

¶ 103. Plaintiffs also allege that Fields maintained inadequate reporting and disciplinary processes at the SCJ. See id. ¶ 78. Plaintiffs do not allege that Fields knew about any danger posed specifically by Inmate Clay, made any decisions about the placement of Inmate Clay and Byrd, or chose the level of supervision that those two detainees received on October 26, 2023.

### 3. Summary

Plaintiffs have not pled plausible deliberate-indifference claims against Defendants. The deliberate-indifference claims against Defendants are DISMISSED WITH PREJUDICE.

## VI. Individual versus Official Capacity

The implausibility of Plaintiffs' claims is attributable to a problem more fundamental than failing to satisfy the elements of their alleged causes of action. Plaintiffs attempt to hold Defendants liable in their individual capacities. However, Plaintiffs' claims are more appropriately classified as claims against Defendants in their official capacities, and therefore as claims of municipal liability.

Absent evidence of personal involvement in the underlying unconstitutional conduct, a claim premised on a supervisory official's adherence to, or continuation of, a policy "improperly conflates a § 1983 claim of individual supervisory liability

with one of municipal liability." Heyerman, 680 F.3d at 647–48 (quoting Phillips v. Roane County, 534 F.3d 531, 543 (6th Cir. 2008)); see also Harvey v. Campbell County, 453 F. App'x 557, 563 (6th Cir. 2011).

In Rager ex rel. GC v. McMinn County, Timothy Cook, a pretrial detainee, was placed in a booking cell with a "violent, frequent flyer at the prison." No. 21-5987, 2023 WL 4927252, at *1 (6th Cir. Aug. 2, 2023). Jail employees had other booking cells available and knew about the frequent flyer's "assaultive tendencies", but they adhered to "an informal 'clean slate' policy, meaning that every inmate who entered the Jail was treated the same, even those with past disciplinary issues." Id. The sheriff supported that policy as "the right thing to do", but he was not personally involved in booking Cook. See id. The frequent flyer attacked Cook, who later died. See id. The Sixth Circuit concluded that, because the failure-to-protect and failure-to-train claims against the sheriff were "premised entirely on the policy he created as the policymaking authority for [the county]", the plaintiff's claims had to be construed as claims of municipal liability. Id. at *3.

Here, Plaintiffs allege that Defendants "had a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures

18

of and for the SCSO." See ECF No. 1, ¶¶ 97, 101. Plaintiffs allege that, despite knowing about dangerous conditions at the SCJ and knowing about ways to alleviate those conditions, Defendants "failed to take adequate steps to curb inmate-on-inmate violence at the [SCJ]." Id. ¶¶ 99, 103. Those claims are, at their core, premised on Defendants' official roles as policymakers for Shelby County. As such, the claims are more appropriately classified as claims of municipal liability.

## VII. Motion to Stay

Defendants have filed a Motion to Stay, see ECF No. 17, seeking to pause litigation until the Court has ruled on their Motion to Dismiss. This Order resolves the Motion to Dismiss. The Motion to Stay is DENIED AS MOOT.

## VIII.    Conclusion

Plaintiffs' Complaint does not allege plausible supervisory-liability or deliberate-indifference claims against Bonner or Fields. Defendants' Motion to Dismiss is GRANTED. Plaintiffs' supervisory-liability and deliberate-indifference claims are DISMISSED WITH PREJUDICE. Having dismissed Plaintiffs' supervisory-liability and deliberate-indifference claims on the merits, the Court need not reach Defendants' claims of qualified immunity. Defendants' Motion to Stay is DENIED AS MOOT.

SO ORDERED this *13th* day of August, 2024.

                                          /s/ *Samuel H. Mays, Jr.*
                                          SAMUEL H. MAYS, JR.
                                          UNITED STATES DISTRICT JUDGE