**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| LAQUITA BYRD, and MARCUS BYRD, Both individually and as Wrongful Death Representatives of DEION BYRD,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT OF SHELBY COUNTY, TENNESSEE,<br><br>Defendant. | ) | No. 2:24-cv-02043-BCL-tmp |

---

**ORDER (1) GRANTING DEFENDANT GOVERNMENT OF SHELBY COUNTY, TENNESSEE'S MOTION FOR SUMMARY JUDGMENT (Doc. 61) AND (2) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 59)**

---

Plaintiffs filed this case in January 2024, seeking to recover damages due to the death of their son, Deion Byrd, who was at the time a pretrial detainee housed at the Shelby County Jail. Doc. 1. Deion Byrd died as a result of an assault committed by another detainee, Donnie Clay, while awaiting a court appearance. Plaintiffs named as defendants Sheriff Floyd Bonner, Jr., in his individual capacity; Chief Jailer Kirk Fields, in his individual capacity; and the Government of Shelby County, Tennessee. Doc. 1. The case was originally assigned to Judge John McCalla, but he immediately transferred it to Judge Samuel Mays. Docs. 2, 10.

Plaintiffs asserted a number of claims, some of which Judge Mays addressed. For the purpose of orientation, the claims asserted by Plaintiffs, and their current status, are summarized here:

- **Count 1 (42 U.S.C. § 1983; Defendant Shelby County):** Plaintiffs claim that Defendant Shelby County violated Deion Byrd's rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to protect him from violence. The Parties have filed competing motions for summary judgment relating to this claim, and those motions are addressed in this Order. Docs. 59, 61.

- **Count 2-3 (42 U.S.C. § 1983, Defendant Bonner and Defendant Fields, respectively):** Plaintiffs claimed that Defendants Bonner and Fields failed to adequately supervise jail employees and policies, leading to Deion Byrd's death. They also alleged that Defendants Bonner and Fields violated Deion Byrd's constitutional rights by failing to protect him. Judge Mays dismissed these claims as insufficiently pled, and they are no longer directly at issue. Doc. 37. *See infra* at 8 (discussing the impact of this ruling on the claims against Defendant Shelby County).

- **Count 4 (Tennessee's Governmental Tort Liability Act, T.C.A. 29-20-205; Defendant Shelby County):** Plaintiffs claim that Defendant Shelby County is liable for the negligence of jail employees that led to Deion Byrd's death. Defendant Shelby County has moved for summary judgment on this claim, and that motion is addressed in this Order. Doc. 61.

- **Count 5 (Loss of Consortium):** Plaintiffs seek to recover damages for loss of consortium resulting from Deion Byrd's death. Plaintiffs have "abandon[ed] their loss of consortium claims as to Section 1983," Doc. 67 at 12, and Defendant Shelby County therefore is entitled to summary judgment on that portion of Count 5. Defendant Shelby County has not made an independent summary judgment argument concerning loss of consortium damages under Tennessee's Governmental Tort Liability Act, so that portion of Count 5 rises or falls with Count 4.

As just noted, Plaintiffs and Defendant Shelby County have filed competing motions for summary judgment. Docs. 59, 61. Those motions were fully briefed in October 2025. Doc. 72. The case was transferred to the undersigned in April 2026. Doc. 86.

For the reasons that follow: (1) Defendant Shelby County's Motion for Summary Judgment (Doc. 61) is **GRANTED**; and (2) Plaintiffs' Motion for Summary Judgment on the issue of liability under Section 1983 (Doc. 59) is **DENIED**.

## BACKGROUND

At least for purposes of summary judgment, the parties agree on the following facts. On October 26, 2023, Corrections Officer Markeisha Adams was assigned to the south side of the 4th

Floor of the Shelby County Jail. Doc. 68 at 1. Inmate Donnie Clay was given a court pass and released from the housing pod, with instructions to report to the court tunnel. *Id*. at 2. Officer Adams was responsible for rounding up several inmates, including Clay for "court call." *Id*.

Officer Adams did not pat Clay down before taking him out of the housing unit. Doc. 61-2 at 2. Officer Adams last saw Clay at 8:46 a.m. *Id*. Clay left the Jail housing area, walked to the court tunnel desk area as instructed, showed his court pass, and was placed in a holding cell at 8:49 a.m. *Id*.

Deputy Charles Wilson, Inmate Deputy for Criminal Court Division I—commonly called a bailiff—gathered six inmates from the holding cell of the court tunnel area, including Clay and Deion Byrd. *Id*. at 3. Like Deputy Adams, Deputy Wilson also failed to pat the inmates down. *Id.*

Deputy Wilson escorted the inmates across the building to Division I. *Id*. The six inmates, including Clay and Byrd, were handcuffed wrist-to-wrist during the escort across the public hall where the courtrooms are located. *Id*. While the six inmates were escorted across the hall, Byrd became disruptive, hollering obscenities. *Id*. at 4.

Upon arrival at the "holding tank" outside the courtroom, Deputy Wilson uncuffed the inmates from each other, one-by-one, placing each one in the holding tank as they were uncuffed. *Id*. Deputy Wilson cuffed Byrd (both hands together) and instructed Byrd to remain in the hallway, intending to return Byrd to the housing unit because of his disruptive behavior. *Id*. At this point, Deputy Wilson's hands were full, as he was holding multiple sets of handcuffs. *Id*. Deputy Wilson then stepped around the corner to place the cuffs on a podium in the courtroom. *Id*.

While Deputy Wilson stepped around the corner, Byrd accused Clay of burglarizing Byrd's house, which Clay denied. *Id*. at 5. Byrd, still handcuffed, entered the holding tank and spat in Clay's face. *Id*. Clay chased Byrd into the adjacent attorney-inmate meeting room a few feet away

and then stabbed Byrd in the neck with a shank. *Id*.

As he was putting the handcuffs down in the courtroom, Deputy Wilson heard a scream. *Id*. at 6. According to Deputy Wilson, the time between leaving the inmates and hearing the scream was a matter of seconds. *Id*. The response by the deputies was almost instantaneous. *Id*. Clay threw the makeshift weapon down and was detained. *Id*. Deputy Wilson and other deputies gave Byrd immediate medical attention. *Id*. All the other inmates remained in the holding tank, and that door was secured. *Id*. Byrd was transported to Regional One Hospital for treatment, where he was pronounced dead the same day. *Id*.

On January 24, 2024, Laquita Byrd and Marcus Byrd ("Plaintiffs") both individually and as wrongful death representatives of Mr. Byrd, filed the present action against Sheriff Floyd Bonner, Jr., Chief Jailer Kirk Fields, and the Government of Shelby County, Tennessee. Doc. 1. Plaintiffs' claims against the individual Defendants, Bonner and Fields, were dismissed due to their failure to allege plausible supervisory-liability or deliberate-indifference claims. Doc. 37 at 19. The remaining claims against Shelby County arise out of alleged violations under 42 U.S.C. § 1983, Tennessee's Governmental Tort Liability Act ("GTLA"), and loss of consortium. Doc. 1.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has carried its burden … its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 612 (6th Cir. 2025). "Blanket denials of a [movant's] evidence are 'not enough' to create a genuine issue of material fact." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Id*. Courts do not make credibility determinations or weigh the evidence when deciding a motion for summary judgment. *See Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

## LEGAL ANALYSIS

### I. Tennessee Governmental Tort Liability Act (Count 4)

The Tennessee Governmental Tort Liability Act waives the "[i]mmunity from suit of all governmental entities … for injury proximately caused by a negligent act or omission of any employee within the scope of his employment"—with exceptions. Tenn. Code Ann. § 29-20-205. One of those exceptions is relevant here: The Act does not waive immunity "if the injury arises out of:

> [f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, *or civil rights*.

Tenn. Code Ann. § 29-20-205(2) (emphasis added). The language is a little odd—what does it

mean for an injury to arise out of civil rights?—but the Parties agree that the so-called "civil rights exception" retains immunity for injuries arising out of a violation of civil rights. Doc. 61-2 at 29; Doc. 67 at 9-10.

In a difficult to parse and nearly citation-free section of their response to Defendant Shelby County's motion for summary judgment, Plaintiffs appear to argue that they may recover under the Act despite claiming a violation of Deion Byrd's civil rights because they allege that the employees directly responsible for the injuries (Deputies Wilson and Adams) acted only negligently, not unconstitutionally, and because Defendant Shelby County contends these employees violated its (constitutionally sufficient) policies (as opposed to following unconstitutional policies). Doc. 67 at 10-11.

Both arguments fail. The first argument fails because, as relevant here, the focus is on the nature of the plaintiff's injury and, specifically, whether it "arises out of … civil rights"—and not whether particular governmental employees' actions, viewed on their own, would support a claim for violation of civil rights. And that fits Plaintiffs' theory to a T, because Plaintiffs claim that Defendant Shelby County violated Deion Byrd's civil rights by adopting policies or practices that would lead employees to act in ways that put detainees' safety at risk. *See Mosier v. Evans*, 90 F.4th 541, 551 (6th Cir. 2024) (holding that the civil rights exception applied to bar negligence claims that arise from the same conduct underlying a § 1983 municipality claim).

Plaintiffs' second argument is also unavailing. At first blush, this looks like it should be a closer call because this argument presupposes a factually alternative claim, as opposed to a negligence claim that is really just part of or a different label for the constitutional claim. Our legal system generally presupposes that plaintiffs may pursue alternative, inconsistent theories of liability, and it is not readily apparent (and indeed, a little surprising) that a defense applicable to

one theory should also foreclose another, alternative and inconsistent theory, simply because they show up in the same complaint and arise out of the same events broadly defined. But precedent leads to the conclusion that the civil rights exception applies here, too. Surveying Tennessee decisions, the Sixth Circuit has observed that the Act's civil rights exception turns on the "gravamen" of the complaint and does not depend on an actual violation of civil rights—applying even when the civil rights claim fails. *See Mosier*, 90 F.4th 541, 552-53 (6th Cir. 2024). And in *Johnson v. City of Memphis*, the Sixth Circuit held that the civil rights exception barred liability for a 9-1-1 operator's negligence that occurred antecedent to and independent of the later invasion of the plaintiff's home which was the basis for the civil rights claim. *See* 617 F.3d 864, 872 (6th Cir. 2010) ("Plaintiff's claim regarding the dispatcher's negligence arises out of the same circumstances giving rise to her civil rights claim under Section 1983. It therefore falls within the [civil rights exception,] and the City retains its immunity."); *see Mosier*, 90 F.4th at 553 (discussing *Johnson*). If the civil rights exception applies in that scenario where the negligence is not a part of the civil rights violation, it also should apply here, where the alternative theory is not a part of the civil rights violation but rather premised on an alternative view of the facts under which the civil rights claim necessarily fails. *See Payton v. Spearman*, 2026 WL 1090052, at *3 n.6 (W.D. Tenn.) (Parker, J.) (rejecting argument "that pleading alternative facts … saves the GTLA claim").

Defendant Shelby County is therefore entitled to summary judgment on Count 4, alleging violation of the Act.

## II. Section 1983

Section 1983 (42 U.S.C.A. § 1983) allows plaintiffs to bring a claim against a "person who, under color of" state law "subjects, or causes to be subjected" the plaintiff (or here, Plaintiffs' decedent) to the "deprivation of any rights, privileges, or immunities secured by the Constitution

and laws" of the United States. Here, Plaintiffs seek to hold a municipality—Defendant Shelby County—liable for violation of Deion Byrd's Fourteenth Amendment right as a pretrial detainee to be safe from harm. *See, e.g., Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 726 (6th Cir. 2022) (explaining that under judicial decisions, the Fourteenth Amendment's Due Process Clause, rather than Eighth Amendment's Cruel and Unusual Punishments Clause, applies to pretrial detainees' claims relating to conditions of confinement, including claims that officials failed to protect them from other prisoners).

Under binding precedent, "[a] municipality is a 'person' under [Section 1983] and so can be held liable for constitutional torts for which it is responsible." *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 565 (6th Cir. 2018). That was the holding of *Monell v. Department of Social Services*, 436 U.S. 658 (1977). That ruling is subject to strong criticisms that it was inconsistent with Section 1983's original public meaning, but it remains the law of the land. *See, e.g., Monell v. Dep't of Social Services*, 436 U.S. 658, 714 (1978) (Rehnquist, J., dissenting).

Still, what does that holding mean for this case? Defendant says *Monell* liability does not apply because the claims against the two individual employees have been dismissed and there is no other claim of a constitutional violation by an individual employee; Plaintiffs counter that the lack of a claimed constitutional violation by an individual defendant is of no matter because the County's policies—particularly a policy of understaffing the jail—led to the constitutional violation.[1]

Defendant has the better argument and thus is entitled to summary judgment. To be clear, that result is not due to a logical application of *Monell*'s rule. Rather, it is based on binding Sixth

---

[1] At least following Judge Mays' order dismissing the claims against individual Defendants Sheriff Floyd Bonner and Chief Jailer Kirk Fields (Doc. 37), there is no dispute that Plaintiffs have no claim of a constitutional violation committed by an individual.

Circuit precedent. As the Sixth Circuit reiterated in a holding mere days ago, "*Monell* claims require a plaintiff to allege a constitutional violation by an individual government official and to connect the official's conduct to a municipal policy or custom." *Zimmermann v. Labish*, -- F.4th --, 2026 WL 2529819, at *9 (6th Cir. 2026). In *Zimmermann*, the Sixth Circuit held that the *Monell* claim "necessarily" failed because "neither" of "the individual state actors … committed a constitutional violation" against the decedent. *Id.* That result followed from a categorical rule: "Axiomatically, there can be no *Monell* liability under Section 1983 unless there is an underlying unconstitutional act." *Id.* (quoting *Andrews v. Wayne Cnty.*, 957 F.3d 714, 725 (6th Cir. 2020); *see also, e.g.*, *Tanner v. Cnty. of Lenawee*, 452 F.3d 472, 481-82 (6th Cir. 2006) ("Because none of the individual officers violated the Tanners' constitutional rights, the claims against Lenawee County necessarily fail as a matter of law."). These cases and others like them articulate and apply the categorical rule barring free-floating *Monell* liability without ifs, ands, or buts. And, as noted, that rule entitles Defendant to summary judgment in its favor.

Still, it is worth thinking a bit about that categorical rule. In *Grote v. Kenton Cnty., Ky.*, 85 F.4th 397 (6th Cir. 2023), a Sixth Circuit panel suggested that the rule either is not or should not be so categorical. In that case, the administrator of the estate of a deceased pretrial detainee sued jail officers and medical personnel and the county that detained the decedent, alleging deliberate indifference to the detainee's medical needs and failure to train. The Sixth Circuit held that the district court erred in granting summary judgment on the deliberate indifference claims against one individual defendant, a nurse, before proceeding to address municipal liability. *Id.* at 411. Surveying case law including its own precedent, the Sixth Circuit explained "it is proper to consider possible constitutional violations committed by a municipality qua municipality, even in the absence of a showing of a constitutional violation by any one individual officer." *Id.* at 413.

The Sixth Circuit highlighted claims for failure to train as a seemingly nonexclusive example of the "scenarios when no officer may have acted unconstitutionally, but the municipality has nonetheless inflicted constitutional harm on a victim," even as it noted that "in many cases, a finding that no individual defendant violated the plaintiff's constitutional rights will also mean that the plaintiff has suffered no constitutional violation." *Id.* at 414.

As noted, that was dicta and so cannot override the (much more frequent) holdings that there can be no *Monell* liability in the absence of an unconstitutional act by an individual.[2] And while the Sixth Circuit has approvingly quoted the *Grote* language, it has not done so in a holding in a published opinion. *See Victor v. Reynolds*, 165 F.4th 987, 997 (6th Cir. 2026) (describing the relevant passage from *Grote* as a holding, albeit in dicta); *Braziel v. Whitmer*, No. 23-1954, 2024 WL 3966238, at *10 (6th Cir. Aug. 28, 2024) (unpublished decision: "*Monell* claims do not always rise and fall with the allegations of a constitutional violation against any individual.").

That said, the *Grote* dicta is persuasive insofar as one accepts *Monell* (again, lower courts must do so despite the strong criticisms on original public meaning grounds) and follows it to its logical conclusion. As noted, Section 1983 allows liability against "[e]very person who" under color of State law "subjects or causes to be subjected, … any person … to the deprivation of federal rights." Municipalities—"persons" under Section 1983, according to *Monell*—therefore can be liable when they subject others to a deprivation of federal rights; the statute imposes no strict

[2] The Court recognizes that some courts, including in this District, have described the relevant passage from *Grote* as a holding. *Compare Donald v. Bonner*, No. 2:23-CV-02738-TLP-ATC, 2025 WL 1932524, at *8, n.18 (W.D. Tenn. July 14, 2025), *with Westbrook v. Bonner*, No. 2:23-CV-02094-SHL-ATC, 2024 WL 4010307, at *8 (W.D. Tenn. Aug. 30, 2024). Respectfully, *Grote*'s discussion of this issue cannot be a holding under any meaningful conception of that term: The claims against the County failed for the independent reason that the plaintiff did not identify any evidence of inadequate training (and, in addition, deliberate indifference behind the inadequate training) as required to support the claim. 85 F.4th at 415. Thus, the Sixth Circuit's disposition did not depend in any way on the language about *Monell* liability in the absence of a constitutional violation by an individual actor; the discussion neither reflected nor was necessary to the Court's bottom line nor (under an even broader conception) set out the rule or standard that in the Sixth Circuit panel's view led to the bottom line.

requirement that someone else—some intermediary—also have independently subjected the plaintiff to a deprivation. To impose such a strict requirement would turn Section 1983 into a narrow respondeat superior statute, allowing municipal liability only for (certain of) the acts of others. Consider, for example, a municipality that by longstanding policy has declined to provide needles to the medical clinic in its jail (say, due to safety concerns), despite repeated pleas from the medical personnel that this was causing grievous harm to some inmates (say, those with diabetes). Perhaps the medical personnel who beg and plead for their patients' safety and make do with what materials they are provided have committed no constitutional violation—their hands are tied, but they are not deliberately indifferent—but (accepting *Monell*) there seems no reason that should preclude liability for the municipality under Section 1983's plain language and the governing precedent.

To be clear, there are good reasons to think twice about a free-floating theory of *Monell* liability. On the question of the law's meaning—the sort of argument that should be motivating courts—perhaps someone will convince the Supreme Court to revisit *Monell* on the basis of (for example) then-Justice Rehnquist's criticisms of the decision. And then there are strong policy concerns about the *Grote* theory of truly direct municipal liability. By generalizing out to the level of municipal policy, as opposed to the actions of an individual, the *Grote* theory would make liability more likely, especially in cases under the Fourteenth Amendment that do not require a showing of subjective deliberate indifference. *See Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 728 (6th Cir. 2022). And that likelihood of liability would entangle the Court in sensitive issues usually entrusted to other, democratically accountable actors: This case and others like it do not involve the structural injunctions that have rightly troubled those who, like the undersigned, are deeply attuned to the properly limited roles of the federal courts under our constitutional

framework, *see Missouri v. Jenkins*, 525 U.S. 70, 126 (1995) (Thomas, J., concurring), but awards of damages—even compensatory damages—and especially large awards of damages can, as a practical matter, have a coercive effect on a defendant's conduct. And, here, the conduct in question concerns a particularly sensitive issue: the funding and running of prisons, including staffing levels. The next case might involve overcrowding, or housing policies, or who knows what else.

True, that sort of coercion through damages is *always* a possibility under Section 1983. But requiring that a plaintiff first show that *an individual* violated the constitution before imposing municipal liability serves a sort of choke or check—an artificial one, to be sure—on potentially sweeping judicial interference with the policies and practices governing the operation of complicated institutions in which the stakes are sky high. All of which is to say that a broad theory of purely municipal liability would likely have sweeping consequences of the sort that have, in other contexts, caused serious concerns about the institutional role of the courts. But none of that should matter: Courts should follow the law where it leads, even if it leads to free-floating municipal liability and all the downstream policy concerns just discussed.

But part of following the law where it leads is respecting binding precedents from superior courts. And, as noted above, those precedents entitle Defendant to summary judgment here. If the governing rule is to be changed, that change necessarily must come from other actors (Congress, a court that sits above this one) or via arguments and precedents not presented here.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**SO ORDERED**, this 31st day of August 2026.

*s/Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE